IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EZZAT ELSAYED, :

    Plaintiff,

    v. : Case No. 3:19-cv-214

NATIONAL CREDIT SYSTEMS, INC., : JUDGE WALTER H. RICE

    Defendant. :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #8); CONFERENCE CALL TO DETERMINE VIABILITY OF AUGUST 9, 2021, TRIAL DATE

---

This matter is before the Court pursuant to a Motion for Summary Judgment ("Motion for Summary Judgment" or "Motion") filed by Defendant, National Credit Systems, Inc., ("NCS" or "Defendant"), against Plaintiff, Ezzat Elsayed ("Plaintiff" or "Elsayed"), Doc. #8. Plaintiff has filed a response, Doc. #10, and Defendant has filed a reply, Doc. #15.

The matter is now ripe for consideration.

**I. Background**

Elsayed lived in an apartment that he rented from Miamisburg By the Mall, formerly known as Towne Asset Properties Management, ("Towne Properties"), for approximately eleven (11) years. Doc. #10-1, PageID#88. He moved in

"beginning in or around 2007." *Id*. When he left the apartment sometime in 2018, he states that the apartment was in a reasonably clean condition. *Id*. Despite the apartment's condition, his security deposit was not returned. He received no itemized notice of damages from his landlord. *Id*.

NCS, a Georgia corporation authorized to do business in Ohio, Doc. #4, PageID#15, collects debts owed to another and admits that from time to time "it acts as a 'debt collector' as defined by the FDCPA." *Id*. On or about February 22, 2018, NCS received a referral from Towne Properties regarding Plaintiff's past-due account from his apartment. Doc. #8-1, PageID#48. The amount allegedly owed by Elsayed was $403.29. Towne Properties represented to NCS that this was accurate. *Id.*

In the spring of 2018, Elsayed began to receive calls from "a creditor. . . stating that I owed a debt." Doc. #10-1, PageID#88. He told the caller that he did not owe any money to the company and requested that they stop calling. *Id*. The calls continued, however, for more than a year. *Id*. Some calls occurred multiple times a day. *Id*. Plaintiff claims that he was not told the amount of the debt, the name of the creditor and was not provided any information telling him that he could dispute the debt in writing. Id. Although Plaintiff asserts that, he received no itemization from NCS concerning the debt, NCS asserts that, on March 27, 2018, it sent Plaintiff documents that it received validating the debt along with a letter verifying it. *Id*.; Doc. #8-1, PageID#48.

NCS states it called Plaintiff a total of 34 times. Doc. # 8-1, PageID#48. Fifteen of the 34 calls were made by Defendant from March 7, 2018, through July 18, 2018, with the remaining 19 calls occurring one year before suit was filed on July 18, 2019. *Id*. NCS states that contemporaneous notes were made by NCS after each call it made to Elsayed. *Id*. The telephone system used by NCS to call Plaintiff was not an automatic telephone dialing system ("ATDS") and all outgoing calls required "human intervention" by an NCS agent. Doc. #8-1, PageID#51. The system could not automatically or predictively dial numbers and was incapable of being configured to use random or sequential number generators. *Id*. Plaintiff states that the telephone calls from NCS caused him to feel felt frustrated, harassed, and embarrassed. Doc. #8-1, PageID#48.

Plaintiff filed his Complaint against NCS on July 19, 2019. He alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 et seq. and the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Following a review of the standard utilized by the Court in ruling on motions for summary judgment, the Court will analyze the legal arguments and evidence asserted by the parties.

**II. Summary Judgment**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

3

*Corp.v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; see also *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the

4

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id*. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). If it so chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III.  Legal Analysis

#### A.  Introduction

NCS's Motion for Summary Judgment argues that there is no genuine issue of material fact as to any of the three claims alleged against it and that it is

entitled to judgment as a matter of law. The Court will analyze each claim and any alleged violations separately.[1]

### B. First Claim for Relief: The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA")

The purpose of the FDCPA is simple: "to eliminate abusive debt collection practices by debt collectors, to [ensure] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The reach of the statute has been described as "extraordinarily broad." *Barany–Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir.2008) (quotation omitted). Although it "bans a wide array of specific conduct." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529 (6th Cir. 2014), it also "prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice." *Id*. As a result, courts are able "to proscribe other improper conduct which is not specifically addressed" in the statute. *Id*. (citations omitted).

---

[1] Defendant's Motion relies, in part, on Plaintiff's failure to respond to discovery that it served pursuant to Fed. R. Civ. P. 33, 34 and 36. In his response to Defendant's Motion, Doc. #10, Elsayed attached his affidavit, Doc. #10-1, and simultaneously filed a Motion to Serve Answers to Defendant's Discovery and to Request a Continuance of Previously Set Deadlines. Doc. #9. NCS opposed this motion and filed a motion to strike Plaintiff's affidavit. Doc. #11. On October 7, 2020, the Court issued a Decision and Entry sustaining Plaintiff's Motion to Serve Answers to Discovery and Request for Continuance of All Deadlines, Doc. #9, and overruling Defendant's Motion to Strike Plaintiff's Affidavit, Doc. #11. Accordingly, in ruling on Defendant's Motion for Summary Judgment, the Court will consider Plaintiff's affidavit, Doc. #10-1, and disregard Defendant's arguments concerning Plaintiff's failure to respond to its discovery.

In this case, there is no dispute that: (1) Plaintiff is a "consumer" within the meaning of the Act; (2) the debt arose out of a transaction for "personal, family or household purposes;" and (3) Defendant is a "debt collector." See 15 U.S.C. §§ 1692a(3),1692a(5)-(6); Doc. #4, PageID#15.  Plaintiff's Complaint alleges that Defendant attempted "to collect on a debt not authorized by contract or law in violation of the FDCPA" and made "false representations in connection with its collection activities." Elsayed alleges he suffered "financial loss, emotional upset, embarrassment, humiliation, and frustration."  Doc. #1, PageID##4-5.  Based on these acts and omissions of NCS, the Complaint alleges violations of the following sections of the FDCPA: §§ 1692d (engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt); 1692e (using false, deceptive, or misleading representation or means in connection with the collection of a debt); 1692e(2) (making a false representation of the character, amount, or legal status of any debt or service rendered or compensation that may be lawfully received by a debt collector); 1692e(10) (using any false representation or deceptive means to collect or attempt to collect a debt) and 1692f (using unfair or unconscionable means to collect or attempt to collect a debt).

Defendant's Motion asserts that because Plaintiff did not respond to its discovery, including certain Rule 36 Requests for Admission, that he has no

evidence of a violation of the FDCPA and did not sustain any damages.[2] It also includes a declaration from the vice-president of operations at NCS, Ron Sapp, ("Sapp Declaration" or "Declaration"), regarding NCS's procedures.  Doc. # 8-1. The Sapp Declaration states, among other things, that NCS received documentation validating Plaintiff's debt and sent those documents, along with a letter verifying the debt, to him on March 27, 2018. Doc. #8-1, PageID#48. The Declaration also lists 34 separate dates when NCS's agent attempted to contact Plaintiff by telephone.  Finally, the Motion argues that any alleged act or omission that occurred prior to July 19, 2018, is barred by the FDCPA's one-year statute of limitations in § 1692k(d). Doc. #8, PageID#42.

In response to Defendant's Motion, Plaintiff submitted his affidavit. Based on Plaintiff's affidavit and statements in the Sapp Declaration, Plaintiff argues that NCS violated three sections of the FDCPA. First, Elsayed asserts that § 1692e(2) was violated since he states he received no information from either Towne Properties or NCS that he owed a debt and received no letter from NCS verifying the debt.  He notes that although documents concerning the cleaning of Plaintiff's apartment and Plaintiff's lease are attached to the Sapp Declaration, the Declaration does not identify, much less authenticate, these documents. Moreover, the March 27, 2018, letter verifying the debt and allegedly sent by NCS to Plaintiff is not attached.  As such, Defendant made a "false representation of

---

[2] See n. 1.

8

the character, amount, or legal status" of the debt. Doc. #10, PageID#83. Second, Plaintiff asserts that NCS violated § 1692g(a)[3] for failing to provide Plaintiff with validation of the debt within five days after the "initial communication." *Id.*, PageID#84. Based on the Sapp Declaration, Plaintiff argues that the "initial communication" occurred on "March 7, 2018, at 9:32 a.m." *Id.*, PageID#84. Accordingly, Plaintiff argues that even if information was sent to Plaintiff on March 27, 2018, as stated in the Sapp Declaration, there is a difference of twenty days and a violation of 1692g(a). *Id.* Finally, Plaintiff asserts that Defendant "failed to properly validate the debt" since he never received an invoice or accounting from NCS but was called 34 times by them. As a result, he was left "feeling embarrassed, harassed, deceived, and frustrated." *Id.*, PageId#85. Although the response does not identify the section of the FDCPA allegedly violated, § 1692d, entitled "Harassment or abuse," prohibits a debt collector from engaging in "any

---

[3] (a) Notice of debt; contents
Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-- (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. § 809(a)(1)-(5).

conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

Defendant's reply argues that Plaintiff, as a matter of law, has no claim under any section of the FDCPA. It first asserts that despite Plaintiff's arguments, NCS has no liability under § 1692e(2), since it was never Plaintiff's landlord under Ohio Revised Code § 5321.16 and, as such, had no obligation to provide Plaintiff with an itemization of damages. Moreover, Defendant contends that Elsayed has failed to provide any evidence that he did not owe the debt, or that NCS made any false, deceptive or misleading representations to him. Doc. #15, PageID##129-130;136.[4] NCS next argues that no violation of § 1692g(a) occurred, since even accepting Plaintiff's argument that the initial communication date was March 7, 2018,[5] resulting in an alleged failure to comply with 15 U.S.C. § 1692g(a) by not

---

[4] Defendant also argues that because Plaintiff filed a small claims complaint against his landlord in Miamisburg Municipal Court on November 21, 2018, to obtain a return of some portion of his security deposit, that "issues of whether the *Rooker-Feldman* doctrine would divest this Court of jurisdiction may exist." Plaintiff, however, filed his state court case prior to the federal case and on August 19, 2020, was successful in obtaining a judgment against his former landlord for $360.00 plus court costs, https://web1.civicacmi.com/MiamisburgMC/Civil/view.aspx?option=Docket. For these reasons as well as others, see *Exon Mobil v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293, 125 S.Ct. 1517 (2005) and *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007, this doctrine does not apply.

[5] NCS argues in its reply that the "initial communication" occurred on February 26, 2018, when NCS "sent Plaintiff a letter required by 15 U.S.C. § 1692g(a) to the address listed as Plaintiff's on the face of his Complaint." Doc. # 15, PageID#131. The Sapp Declaration, however, contains no reference to anything occurring on February 26, 2018. Doc. #8-1. It states that it sent information and a letter verifying the debt to Plaintiff on March 27, 2018, Doc. #8-1, PageID#48.

10

validating the debt within five days, Plaintiff did not file his Complaint within one-year of the violation as required under § 1692k(d). Finally, NCS contends that from July 18, 2018 through July 18, 2019, no violation of § 1692d occurred since for this one-year time period Plaintiff received a total of 19 telephone calls and, as a matter of law, this is not "harassment or abuse."

Based on the evidence before the Court, as set forth in the Sapp Declaration and Plaintiff's affidavit, there is a genuine issue of material fact as to whether Defendant sent Plaintiff a letter verifying his debt and enclosing documents validating the debt as stated in the Sapp Declaration. The Declaration does not attach the letter allegedly sent to Elsayed and does not authenticate the documents attached to the declaration as coming from Towne Properties. Plaintiff argues that the alleged failure of NCS to provide him with written information to him is a violation of § 1692e(2), and constitutes a "false representation of the character, amount, or legal status" of the alleged debt with Towne Properties. Although NCS does not have the duties of a landlord under § 5321 of the Ohio Revised Code, as a debt collector it does have the obligation to provide written notice to the consumer about the debt and to inform the consumer of the right to dispute the information in writing within 30 days pursuant to § 1692g. *Macy v. GC Services Limited Partnership* 897 F.3d 747, 757 (6th Cir. 2018) (citing *Papetti v. Does* 1-25, 691 F. App'x 24, 26 (2d Cir. 2017) ("Section 1692g furthers th[e] purpose [of protecting debtors from abusive debt collection practices] by requiring a debt collector who solicits payment from a consumer to provide that

11

consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it.").

Because a genuine issue of material fact exists concerning whether NCS provided this information to Plaintiff, Defendant's Motion for Summary Judgment as to § 1692e(2) is overruled.

With respect to Plaintiff's claim that § 1692g(a) was violated, since the debt was not validated within five days of Plaintiff's initial communication date of March 7, 2018, the Court finds that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law on this section of the FDCPA. In *Rotiske v. Klemm*, 140 S. Ct. 355 (2019), the Supreme Court considered whether the discovery rule should apply to the one-year statute of limitations for the FDCPA in § 1692(d). The Court rejected this argument and held that in private actions under the FDCPA, absent the application of an equitable doctrine, the one-year statute of limitations in § 1692k(d) begins to run on the date on which the alleged violation occurs. In this case, although NCS failed to validate the debt by March 12, 2018, five days after the alleged initial communication of March 7, 2018, and as required by § 1692g(a), Plaintiff's Complaint was not filed until July 18, 2019. Accordingly, any alleged violation of § 1692g(a) is barred by § 1692k(d), the one-year statute of limitations.

Defendant also argues that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law concerning Plaintiff's claim for harassment or abuse under § 1692d. NCS asserts that because of the one-year

12

statute of limitations, at issue is whether 19 telephone calls made by Defendant to Elsayed from July 18, 2018, to the filing of the Complaint on July 18, 2019, is a violation of § 1692d. Although Plaintiff does not specify when he received the call from Defendant, he does state that he requested that the calls stop and told NCS that he did not owe any debt.

Section 1692d provides, in relevant part, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." It further states that, "[W]ithout limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d. Whether a debt collector's telephone calls harass, oppress or abuse a consumer is ordinarily a question for the jury, *Durthaler v. Accounts Receivable Management, Inc.*, 854 F. Supp.2d 485, 489 (S.D. Ohio 2012) (Sargus, J.) (no violation of § 1692d where, within 73 days, debt collector made 30 calls to debtor and two calls to debtor's roommate, one of which was after the roommate informed collector that number was incorrect). However, there is "no bright line rule regarding the number of calls which creates the inference of intent," *Hicks v. America's Recovery Solutions, LLC,* 816 F.Supp.2d 509, 515 (N.D.Ohio 2011(854 F. Supp2d at 489). Viewing the evidence in the light most favorable to Plaintiff, he received 19 telephone calls within a period of 365 days with some of these calls being made

13

on the same day. He requested that the calls stop and stated that he did not owe the debt. Although this is not ordinarily enough to constitute harassment or abuse, *Durthaler*, 854 F. Supp.2d at 489, in this case, there is a material issue of fact as to whether Plaintiff was sent information from NCS validating the debt or a letter from Defendant verifying the debt. Because of this significant disputed issue, the Court cannot state, as a matter of law, that 19 telephone calls from Defendant over a period of 12 months did not violate § 1692d. Defendant's Motion for Summary Judgment on § 1692d is overruled.

### C. Second Claim for Relief: Consumer Sales Practices Act, Ohio Revised Code § 1345.01 ("CSPA") et seq.

Defendant also moves for summary judgment for any violation of the Consumer Sales Practices Act, Ohio Revised Code § 1345.01, ("CSPA"), et seq., the Complaint's second claim for relief. Doc. #1, PageID#5. NCS asserts that no claim under the CSPA exists in this case as a matter of law, since Plaintiff's lease was for an apartment and Ohio law holds that this consumer act does not apply to a residential lease. *Heritage Hills, Ltd. v. Deacon*, 49 Ohio St. 3d 80, 551 N.E. 125, 128 (1990). The Court agrees with Defendant, and finds that there is no genuine issue of material fact and that NCS is entitled to judgment as a matter of law regarding Plaintiff's second claim for relief under the CSPA. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's second claim for relief is sustained.

**D. Third Claim for Relief: Telephone Consumer Protection Act of 1991 ("TCPA") 47 U.S.C. § 227**

Plaintiff's third claim is under the Telephone Consumer Protection Act of 1991, ("TCSPA") 47 U.S.C. § 227. Doc. #1, PageID#7. To establish liability under the TCPA, Plaintiff must establish that Defendant's telephone system is an ATDS, one capable of randomly or sequentially dialing or texting telephone numbers *Gary v. TrueBlue, Inc.*, 786 F. App'x 555, 556 (6th Cir. 2019) (citing 47 U.S.C. § 227(a)(1)).  The Sapp Declaration clearly states that all outgoing calls made to Plaintiff on its telephone system required "human intervention," that the system could not automatically or predictively dial numbers and was incapable of being configured to use random or sequential number generators. Doc. #8-1, PageID#51. As such, the NCS telephone system did not qualify as an ATDS under the TCPA. No contradictory evidence is offered by Plaintiff.

With respect to Plaintiff's third claim for relief under the TCPA, the Court finds that there is no genuine issue of material fact that Defendant's telephone system was not an ATDS, and that, therefore, Defendant is entitled to judgment as a matter of law.   Defendant's Motion for Summary Judgment as to Plaintiff's third claim for relief is sustained

**III. Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment, Doc. #8, is SUSTAINED in part and OVERRULED in part.  Defendant's

motion as to Plaintiff's claim under § 1692g(a) of the FDCPA in the First Claim for Relief is SUSTAINED.  Defendant's motion as to §§ 1692e(2) and 1692d of the FDCPA in the First Claim for Relief is OVERRULED. Defendant's motion as to Plaintiff's claim under the OCSPA in the Second Claim for Relief and the TCPA in the Third Claim for Relief is SUSTAINED.

As a result of this Decision and Entry, Plaintiff's claims under §§ 1692e(2) and 1692d of the FDCPA in the First Claim for Relief remain pending.

Counsel of record will note that a conference call with the Court is scheduled for May 5, 2021, at 5:00 p.m. to determine the viability of the August 9, 2021, trial date.

Date: April 23, 2021

WALTER H. RICE
UNITED STATES DISTRICT JUDGE