IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EZZAT ELSAYED, :

    Plaintiff, :

v. : Case No. 3:19-cv-214

NATIONAL CREDIT SYSTEMS, INC., : JUDGE WALTER H. RICE

    Defendant. :

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT (DOC. #24); TERMINATION ENTRY

---

This matter is before the Court pursuant to a Renewed Motion for Summary Judgment ("Motion for Summary Judgment" or "Renewed Motion") filed by Defendant, National Credit Systems, Inc. ("NCS" or "Defendant"), against Plaintiff, Ezzat Elsayed ("Plaintiff" or "Elsayed"). Doc. #24. Plaintiff has filed a response, Doc. #25, and Defendant has filed a reply, Doc. #26.

The matter is now ripe for consideration.

**I. Procedural and Factual Background**

For approximately 11 years, Elsayed lived in an apartment at Miamisburg by the Mall apartments. Doc. #10-1, PageID#18; Doc. #1. He vacated his apartment sometime in 2017 and on February 22, 2018, Towne Properties Asset

Management Company ("Towne Properties"), the alleged owner of the apartments, referred Plaintiff's account to NCS, a company that attempts to "collect obligations owed to another." Doc. ##24-2, PageID#205 and Doc. #4, PageID#15. Towne Properties represented to Defendant that the $403.29 balance owed by Plaintiff was accurate. Doc. #24-1, PageID#205.

On March 7, 2018, at 9:32 a.m., NCS called Plaintiff to discuss his debt to Towne Properties. *Id.* The amount of the debt was disputed by him and Defendant contemporaneously noted the dispute in its account management system. *Id.* On March 16, 2018, at approximately 8:43 a.m., documentation of the debt was sent to NCS by Towne Properties and on March 28, 2018, NCS sent a letter to Plaintiff. *Id.* The letter included the name of the creditor, the account number, the balance due of $403.29, the name of the NCS Customer Representative and two telephone numbers for her. Doc. #24-2, PageID#207. The March 28, 2018, letter also acknowledged that Plaintiff disputed the debt, and stated, among other things, that the amount had been investigated and found to be valid and that if Plaintiff had any information supporting his position, it should be provided to NCS. *Id.* The final paragraph of the letter consisted of one sentence that stated as follows: "Enclosed you will find documentation provided to us by MIAMISBURG BY THE MALL APTS / 8460."[1] *Id.*, PageID#206.

---

[1] According to the March 28, 2018, letter, "8460" is the NCS Account Number for Towne Properties.

2

The documentation that NCS claims was included in the March 28, 2018, letter consisted of an itemized "Move Out Invoice" on Towne Properties's stationery and a copy of Elsayed's lease agreement with them. *Id.*, PageID##206-210. The Move Out Invoice listed specific charges for work done to Plaintiff's apartment in August 2017, along with credits for 15 days of rent received and his security deposit. *Id.*, PageID#208.

Plaintiff filed his Complaint against NCS on July 19, 2019, and on June 16, 2020, Defendant filed a motion for summary judgment based, in part, on Plaintiff's failure to respond to discovery. Doc. #8. Thereafter, on October 7, 2020, the Court issued a Decision and Entry that sustained Plaintiff's motion to serve answers to discovery, continued all deadlines and overruled Defendant's motion to strike Plaintiff's affidavit. Doc. #17. On April 23, 2021, the Court sustained in part and overruled in part Defendant's Motion for Summary Judgment, Doc. #23. As a result of that ruling, Plaintiff's only remaining claims are under §§ 1692e(2) and 1692d of the Fair Debt Collection Practices Act ("FDCPA"), both alleged in his First Claim for Relief. *Id.*, PageID#187. NCS's Motion for Summary Judgment, which includes a Second Declaration of Ron Sapp and authenticated exhibits, Doc. #24-2, seeks dismissal of both of these claims.

**II. Summary Judgment**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; see also *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id*. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). If it so chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Legal Analysis

#### A. First Claim for Relief: 15 U.S.C. § 1692e(2), FDCPA

Section 1692e(2) of the FDCPA reads as follows:

§ 1692e. False or misleading representations
A debt collector may not use any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt.

5

> Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> \* \* \* \* \* \* \* \* \*
>
> (2) The false representation of--
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

Included with NCS's Renewed Motion is a Second Declaration of Ron Sapp, the Vice-President of Operations for NCS. Doc. #24-2, PageID#204. In his detailed declaration, he states that he is "charged with oversight of NCS's day-to-day collection activities" including compliance "with company policies and procedures" and "all collection laws including . . . the Fair Debt Collection Practices Act." *Id.* He also states that he has "personally reviewed NCS's business records pertaining to Plaintiff," that the records were kept in the ordinary course of business and that "[O]n or about March 27, 2018, NCS sent Plaintiff a letter verifying his debt, with documents relating [to] his debt enclosed." *Id.*, PageID#205. The letter, dated March 28, 2018, and documentation received by NCS from Towne Properties, are attached to his declaration and consist of the Move Out Invoice on Towne Properties stationery and Elsayed's lease for his apartment. *Id.*, PageID##205-210.

In response to Defendant's Renewed Motion, Elsayed does not argue any violations of § 1692e(2). Instead, he asserts that pursuant to *Macy v. GC Servs. L.P.*, 897 F.3d 746 (6th Cir. 2018) and 15 U.S.C. § 1692g(a), NCS was required to

6

provide Plaintiff with certain notifications including "a statement that if the consumer notifies the debt collector in writing within a thirty-day period that the debt or any portion is disputed," the debt collector will obtain verification of the debt or a copy of a judgment. *Id.*, at 756-757. He also contends that until the requested verification of the debt is provided, § 1692g(b) requires that collection efforts must stop. He asserts that "Defendant's reliance on the May 28, 2018[,] letter is misplaced" because it does not provide notice to Plaintiff to request verification of the debt "within thirty (30) days as required under 15 U.S.C. § 1692g(a)" and that NCS's reliance on the "'cover letter' to those documents (dated March 28, 2021)," raises a "question of fact" as to whether any documentation was ever sent to Plaintiff. Doc. #25, PageID#214.[2]

Based on the Second Declaration of Ron Sapp, NCS sent Plaintiff the March 28, 2018, letter which gave notice to Elsayed of the amount of the debt, to whom it was owed, acknowledged that Plaintiff disputed the debt and stated that he should send any information refuting the debt to NCS. The letter also provided the name of an NCS representative along with two telephone numbers to contact her and that documentation provided by Miamisburg by the Mall Apartments was enclosed. Although Plaintiff's affidavit, filed July 7, 2020, stated that he did not receive "any itemization from NCS "or any other notices" from them, when

---

[2] The Court assumes that Plaintiff's reference to "May 28, 2018," and "March 28, 2021," are typographical errors and that the intended dates were March 28, 2018.

7

deposed on December 21, 2020, he testified that he, in fact, received Defendant's March 28, 2018, letter. Doc. # 24-1, Page Id ##195, 200-201.[3]  Plaintiff's argument that § 1692g, validation of debts, was violated is irrelevant.  Not only does Plaintiff's Complaint fail to allege any violation of this section of the FDCPA, the Court's April 23, 2021, Decision and Entry, Doc. #23, considered Plaintiff's argument that § 1692g(a) "Notice of debt; contents" was violated and found that it was barred by the FDCPA's one year statute of limitations in § 1692k (d). *Id.*, at PAGEID#182.

Plaintiff has failed to identify "any false, deceptive, or misleading representation or means in connection with" Defendant's collection of the $403.29 debt.  By mailing the March 28, 2018, letter with the documentation to Plaintiff, Defendant did all that it was required to do.  Plaintiff, who testified in his deposition that he received the letter, cannot now create a <u>genuine</u> dispute of a material fact by arguing, without any explanation, that his earlier affidavit stated he did not receive it.  Just as a party cannot create a disputed issue of material fact by filing a "sham affidavit" that contradicts earlier deposition testimony,

---

[3] Based on the Sapp Declaration, there is also no dispute that the documentation from Towne Properties was sent by NCS to Plaintiff. Doc. #24-2, PageI#206. Even assuming that § 1692g(a) is relevant, this section only requires that the "the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be *mailed* to the consumer by the debt collector." 28 U.S.C. §1692g(a)(4). (emphasis added). This section does not require proof of receipt by the debtor. *Mahon v Credit Bureau of Placer County, Inc.*, 171 F.3d 1197,1201 (9th Cir. 1999) ("The plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor.")

8

*Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899 (6th Cir. 2006), neither can Plaintiff argue that a genuine dispute of a material fact exists because his deposition testimony refutes his earlier affidavit. Accordingly, the Court finds that there is no genuine dispute of a material fact and NCS is entitled to judgment as a matter of law on Plaintiff's claim under § 1692e(2) of the FDCPA.

### B. First Claim for Relief: 15 U.S.C. § 1692d, FDCPA

Plaintiff has also alleged a violation of § 1692d, the anti-harassment provision of the FDCPA, as a result of telephone calls that he began receiving "from a creditor in the Spring of 2018 stating that I owed a debt." Doc. 10-1. He states that he told the caller that he did not owe the money, but that the calls continued, "often multiple times in a day," for more than a year and that he "felt harassed by the debt collector company." *Id.* Plaintiff states that he received a minimum of 19 calls in one year. Doc. #25, PageID#216.[4] Section 1692d states that "[A] debt collector may not engage in any conduct the natural consequence

---

[4] Although Plaintiff alleged that he received more than 19 telephone calls from NCS, because the statute of limitations for suits brought under the FDCPA is one year, 15 U.S.C. § 1692k(d), the Court limited the number of these calls to those made one-year prior to the July 19, 2019, filing of the Complaint. Doc. #23, PageID#183-185. As stated in the First Declaration of Ron Sapp, NCS attempted to contact Plaintiff by telephone in March of 2018 for four consecutive days and, thereafter, the telephone calls were made to him once a week in April 2018 and later monthly or at most twice a month from May through July 11, 2019. Doc. # 8-1, PageID#48. Accordingly, because there was no continuous pattern or course of conduct constituting a single violation, the Court did not consider extending the one-year statute of limitation to include calls prior to July 19, 2018. *Scheiner v. Portfolio Recovery Assocs., LLC*, No. CV 12-518-JGW, 2013 WL 12103069, (Wehrman, M.J.) (significant gaps in telephone calls made to debtor did not permit application of continuing violations doctrine and extension of the one year statute of limitations in FDCPA claim under § 1692d(5)).

9

of which is to harass, oppress, or abuse any person in connection with the collection of a debt." This section also lists nonexclusive examples of conduct that violates § 1692d, including the following: "(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

NCS asserts that, as a matter of law, 19 telephone calls in a 12-month period of time do not violate § 1692d(5), particularly since it sent the March 28, 2018, letter and verification to Plaintiff. In response, Plaintiff argues that whether the March 28, 2018, letter was sent is a question of fact[5] and there is no "bright line" for identifying the number of telephone calls required to show intent. He further contends that "the Sixth Circuit has held that the trier of fact is responsible for determining whether the conduct was harassing." Finally, he argues that evidence of Defendant's intent exists because the calls continued after Elsayed told NCS to stop calling him. Doc. #25, PageId#216.

A violation of § 1692d(5) requires that calls from Defendant be made "repeatedly or continuously" and "with intent to annoy, abuse, or harass any person at the called number." In interpreting this subsection of § 1692d, "[C]ourts

---

[5] Although the Court's Decision and Entry of April 23, 2018, stated that 19 telephone calls in one year is "not ordinarily enough to constitute harassment or abuse," *Duerthaler v. Accounts Receivable Management, Inc.*, 854 F. Supp.2d 485, 489 (S.D. Ohio 2012) (Sargus, J.), it held that because genuine issues of material fact existed concerning whether the March 28, 2018, letter was sent to Plaintiff, along with the verification of the debt, the Court could not state, as a matter of law, that no violation of § 1692d had occurred. Doc. #23, PageID#185.

have followed the Federal Trade Commission's interpretations, finding that the term 'repeatedly' means 'calling with excessive frequency under the circumstances,' and that 'continuously' means 'making a series of calls, one right after the other.'" *Hicks v America's Recovery Solutions, LLC,* 816 F. Supp. 2d 509, 515 (N.D. Ohio 2011) (citing *McVey v. Bay Area Credit Service*, No. 4:10–CV–359–A, 2010 U.S. Dist. LEXIS 130923, 2010 WL 2927388, at *6 (N.D.Tex. July 26, 2010) (citing Federal Trade Comm'n Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097)). Additionally, "although the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, . . . Congress has indicated its desire for the courts to structure the confines of § 1692d.'" *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir.2006) (*citing Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir.1985)).

Here, although 19 telephone calls in a twelve-month period of time could be evidence of an "intent to annoy, abuse or harass," depending upon the circumstance of the calls, no evidence has been submitted to the Court other than that "NCS attempted to contact Plaintiff via telephone" 19 different times on certain days from July 19, 2018, through July 19, 2019. Doc. #8-1, PageID#48. The Court has no evidence of any daily calls during this time period, what hours of the day the calls were made, the duration of the calls, what telephone number NCS called or if an NCS representative spoke to Plaintiff every time that a call was made to him. Additionally, if multiple telephone calls were made by NCS to Plaintiff on the same day as he alleges, the Court has no evidence of when these

11

calls occurred, if at all. Finally, there is no evidence that any threats or disparaging remarks were made by NCS to Elsayed during any telephone calls. Although Plaintiff contends that evidence of an intent to harass exists because he requested that NCS stop telephoning him and this did not occur, he did not send a written request to Defendant to cease communication as is required by 15 U.S.C. 1692c(c). Based on the evidence before it, the Court cannot infer that NCS intended to annoy, abuse or harass Elsayed merely by placing 19 telephone calls to him in one year.

Accordingly, the Court finds that there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law on Plaintiff's claim under § 1692d of the FDCPA.

### IV. Conclusion

For all the foregoing reasons, Defendant's Renewed Motion for Summary Judgment, Doc. #24, is SUSTAINED.

Judgment is to enter in favor of Defendant, National Credit Systems, Inc., and against Plaintiff, Ezzat Elsayed.

The captioned case is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Date: October 27, 2021

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE